UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60033-Civ-COHN
MAGISTRATE JUDGE P.A. WHITE

O'NEILL JACKSON a/k/a          :
KEVIN WILLIAMS,
                               :
     Petitioner,
                               :
v.                                        REPORT OF
                               :       MAGISTRATE JUDGE
WALTER A. McNEIL,
                               :
     Respondent.
_____ :

## I. Introduction

O'Neill Jackson, a state prisoner confined at Martin Correctional Institution at Indiantown, Florida, has filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his conviction entered in Case No. 02-13471 in the Circuit Court of the Seventeenth Judicial Circuit of Florida at Broward County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with separate supporting memorandum of law and attached exhibits, the Court has the respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply with supporting affidavit and exhibits.

## II. Claims

Jackson raises the following grounds for relief:

1.   He received ineffective assistance of trial counsel, because his lawyer failed to preserve for direct appeal the issue that the trial court improperly restricted questioning on this theory of self-defense during the *voir dire* proceeding.

2.   He received ineffective assistance of trial counsel, because his lawyer failed to file a motion to suppress his involuntary post-arrest statements.

3.   He received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal that the jury instructions were fundamentally flawed.

4.   His sentence of forty years' imprisonment is unlawful, because it exceeds the statutory maximum without a jury finding.

### III. Procedural History

O'Neill Jackson a/k/a Kevin Williams[1] was charged by Information with the offense of attempted first degree murder of Earl Smith.[2] (Information)(DE# 10; Ex. 1). Jackson proceeded to trial before a jury where he was found guilty as charged in the Information. (Verdict at 1)(DE# 10; Ex. 2). The jury further found that Jackson was in actual possession of a firearm during the commission of the offense, that he discharged that firearm, and

---

[1]Petitioner Jackson was referred to in the state court proceedings as both "O'Neill Jackson" and "Kevin Williams." During the trial proceedings, he was identified as "Kevin Williams." As Petitioner has used the name "O'Neill Jackson" in his federal petition, he will be referred to in this Report as "Jackson," unless indicated otherwise.

[2]In brief, this case involves a dispute regarding a $5,000.00 loan made to Jackson by the victim and Jackson's failure to repay the loan plus a $500.00 commission. Multiple requests were made by the victim to Jackson to repay the debt, which were ignored. On the date of the subject incident, the victim confronted Jackson when the two men met at a local soccer game and heated words were exchanged. During the confrontation, Jackson shot the victim. The defense at trial was self-defense. Jackson claimed that during the exchange, the victim turned towards his nearby parked truck and inside the truck was the victim's gun. Jackson maintained that the victim was going to shoot him, requiring him to shoot first to protect himself. For a more extensive recitation of the facts of the case and citations to the evidence admitted at trial, see Initial Brief of Appellant at 3-6. (DE# 10; Ex. 5). See also Trial Transcript. (DE# 14).

2

that great bodily harm was inflicted upon the victim as a result. <u>Id</u>. at 2. Jackson was adjudicated guilty of the offense and he was sentenced to a term of imprisonment of forty years with a twenty-five-year mandatory minimum term. (DE# 10; Ex. 4, 5). Jackson prosecuted a direct appeal from his conviction, raising the sole claim that the trial court erred in limiting his voir dire on his defense of self-defense. (DE# 10; Ex. 5). The Florida Fourth District Court of Appeal affirmed Jackson's conviction and sentence in a *per curiam* decision without written opinion. (DE# 10; Ex. 7). <u>See also</u> <u>Jackson v. State</u>, 931 So.2d 919 (Fla. 4 DCA 2006)(table).

Jackson also sought postconviction relief, first filing in the trial court, through counsel, a motion pursuant to <u>Fla.R.Crim.P</u>. 3.850, alleging ineffective assistance of trial counsel and appellate counsel, based on trial counsel's failure to file a motion to suppress the post-arrest statements. (DE# 10; Ex. 9). Jackson claimed that the *Miranda*[3]-warnings given were inadequate because they had not advised him of his right to counsel *during* questioning. (DE# 10; Ex. 9). The state filed a response, asserting that Jackson was not entitled to postconviction relief in that the claim was meritless. (DE# 10; Ex. 10). Specifically, the state argued that the *Miranda*-warnings here were consistent with Florida law principles. <u>Id</u>., *citing*, <u>Canete v. State</u>, 921 So.2d 687 (Fla. 2006).[4] The trial court agreed with the state and summarily denied the Rule 3.850 for the reasons asserted in the state's response which was attached to the court's written order. (DE# 10; Ex. 11). Jackson, through counsel, took an appeal from the denial of

---

[3]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[4]The court held in *Canete* that, although <u>Roberts v. State</u>, 874 So.2d 1225 (Fla. 4 DCA 2004), *rev. denied sub nom.* <u>State v. West</u>, 892 So.2d 1014 (Fla. 2005), required that a defendant be advised that he or she has a right to have an attorney present during an interrogation, the rights waiver form signed by the defendant in *Canete* adequately informed him of this right.

postconviction relief. (DE# 10; Ex. 12). The trial court's ruling was *per curiam* affirmed without written opinion. (DE# 10; Ex. 13). <u>See also</u> <u>Jackson v. State</u>, 952 So.2d 1202 (Fla. 4 DCA 2007)(table).

Before the mandate had issued by the state appellate court in the Rule 3.850 proceedings, Jackson next filed in the trial court a <u>pro</u> <u>se</u> motion to correct an illegal sentence pursuant to <u>Fla.R.Crim.P</u>. 3.800, challenging his sentence on the identical ground presented in this federal petition (i.e., that his enhanced sentence was violative of the principles established in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). (DE# 10; Ex. 15). His motion was summarily denied by the trial court as refuted by the record (DE# 10; Ex. 16), and the trial court's ruling was affirmed on appeal. (DE# 10; Ex. 17). <u>See also</u> <u>Jackson v. State</u>, 959 So.2d 271 (Fla. 4 DCA 2007)(table).

Jackson additionally pursued state habeas corpus proceedings in the state courts. He first filed in the Florida Fourth District Court of Appeal a <u>pro</u> <u>se</u> petition for writ of habeas corpus, alleging that he received ineffective assistance of appellate counsel on direct appeal for the identical reason asserted here as ground three. <u>See</u> Petition for Writ of Habeas Corpus. (Appendix "F" to Petition Alleging Ineffective Assistance of Post-Conviction and Appellate Counsel)(DE# 10; Ex. 25). By order entered by the appellate court the petition was denied on the merits, and Jackson's subsequent motion for rehearing was denied. <u>See</u> <u>Jackson v. McDonough</u>, No. 4D07-3254 (Fla. 4 DCA September 4, 2007), http://www.4dca.org.[5] He filed a second <u>pro</u> <u>se</u> petition for writ of habeas corpus in the appellate court, alleging that he received

---

[5]The Court takes judicial notice of information available at the database maintained by the Clerk of Court, Florida Fourth District Court of Appeal, http://www.4dca.org, viewed this date in <u>Jackson v. State</u>, Case No. 4D07-3254. <u>See</u> <u>Fed.R.Evid</u>. 201.

ineffective assistance of postconviction counsel during the trial and appellate proceedings. (DE# 10; Ex. 25). Without first requiring a response from the state, the appellate court denied the petition on procedural grounds, stating that ineffective assistance of postconviction counsel is not a cognizable claim. (DE# 10; Ex. 26).

Jackson returned to the trial court, filing a pro se pleading entitled, "Petition for Writ of Habeas Corpus or in the Alternative a 3.850 or 3.800(a) Motion for Post-Conviction Relief" and supporting memorandum of law. (DE# 10; Ex. 27). Jackson attacked his conviction and sentence on seven grounds not related to the instant federal petition. Id. The state filed a response, asserting that Jackson was not entitled to the relief he sought in that his claims were procedurally barred and/or meritless. (DE# 10; Ex. 28). The trial court summarily denied the motion for the reasons asserted by the state in its response which was attached to and incorporated in the trial court's order. (DE# 10; Ex. 29). The Florida appellate court again issued a *per curiam* affirmance without written opinion, and denied Jackson's motion for rehearing. (DE# 10; Ex. 31, 32, 33). See also Jackson v. State, 993 So.2d 974 (Fla. 4 DCA 2008)(table). Soon after all state court proceedings had concluded, Jackson came to this Court filing the instant petition pursuant to 28 U.S.C. §2254.[6]

IV. Threshold Issues - Timeliness, Exhaustion and Procedural Bar

The respondent correctly does not challenge the timeliness of this petition. See 28 U.S.C. §2244(d). Further, the respondent

---

[6]It is noted that, while he was exhausting his state court remedies in the state courts as to certain of his claims, Jackson filed an earlier pro se petition pursuant to 28 U.S.C. §2254 in this Court. See Jackson v. McDonough, No. 07-60965-Civ-Cohn. Pursuant to Jackson's subsequent motion for withdrawal, the petition was dismissed without prejudice. Jackson v. McDonough, No. 07-60965-Civ-Cohn (S.D.Fla. August 14, 2007)(dismissed without prejudice).

properly concedes that the claims raised in this federal petition have been properly exhausted before the state courts, see 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[7] Even if any of the claims are technically unexhausted, such as ground one, since the claims are unsupported by the record and/or meritless for the reasons expressed herein, it will best serve the interest of judicial economy not to further belabor the exhaustion and related procedural bar issues and to exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

V. Standard of Review

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996).

---

[7]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. See Caraballo v. State, 805 So.2d 882 (Fla. 2 DCA 2001). Under Florida law, the proper vehicle for asserting an ineffective assistance of appellate counsel claim is a petition for writ of habeas corpus directed to the appellate court that considered the direct appeal. Smith v. State, 400 So.2d 956, 960 (Fla. 1981).

Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v.</u>
<u>Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585
(2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150
L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11
Cir. 2007). It is important to recognize just how limited is this
Court's review in a habeas proceeding. The Antiterrorism and
Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132,
110 Stat. 1214 (1996), provides that a federal court may not grant
the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States;
> or
>
> (2) resulted in a decision that was based upon an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v.</u>
<u>Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion
> opposite to that reached by this Court on a question of law or
> if the state court decides a case differently than this Court
> has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

In deciding whether a state court ruling involved an "unreasonable
application" of federal law, this Court does not focus merely upon
whether the state court decision was erroneous or incorrect;
rather, this Court may issue a writ of habeas corpus only if the
state court's application of clearly-established federal law was

objectively unreasonable. *See id*. at 409-11. <u>See also</u> <u>Knowles v.</u>
<u>Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers
to the holdings, as opposed to the dicta, of [the U.S. Supreme]
Court's decisions as of the time of the relevant state-court
decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523
(majority opinion by O'Connor, J.). Findings of fact by the state
court are presumed correct, and the petitioner bears the burden of
rebutting that presumption of correctness by clear and convincing
evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840,
844 (11 Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2053
(2008).

## VI. <u>Discussion</u>

### A.  <u>Ineffective Assistance of Trial Counsel</u>

Jackson claims that he received ineffective assistance of
trial counsel for two enumerated reasons. To prevail on a claim of
ineffective assistance, a petitioner must demonstrate both that his
attorney's efforts fell below constitutional standards, and that he
suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S.
668 (1984). A habeas court's review of a claim under the *Strickland*
standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S.
___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*,
<u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1
(2003)(per curiam). The relevant question "is not whether a federal
court believes the state court's determination under the *Strickland*
standard was incorrect but whether that determination was
unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct.
at 1420. (citations omitted). Finally, "because the *Strickland*
standard is a general standard, a state court has even more
latitude to reasonably determine that a defendant has not satisfied

8

that standard." Id.

### (1) Claim One

Jackson claims in ground one that his lawyer rendered ineffective assistance when he failed to preserve for direct appeal the issue that the trial court improperly restricted questioning on his theory of self-defense during the *voir dire* proceeding. This claim is meritless, as refuted by the record. The record reveals that during the jury selection process, trial counsel Ferraro stated:

> Okay. Now, let me go into another area right now. Does everyone believe that you have the right to protect yourself and I'm going to tell you right now again I can't go into the facts of the case, but one of the issues that the jury is going to have to consider is whether or not Mr. [Jackson] acted in self-defense.

(Trial Transcript at 142)(DE# 14). The prosecutor immediately lodged an objection and the trial court sustained the objection. Id. at 142-43. The court advised trial counsel not to pre-try the case, but stated, "You may go into general concepts." Id. at 143. The court next addressed the venire, stating, "Members of the jury, please disregard whether the jury will have to consider this issue for purposes of trial." Id. Trial counsel then proceeded with questioning, asking the prospective jurors, "Does everyone believe that a person has the right to act in self-defense?" Id. No objection was lodged, and trial counsel was permitted to conduct further inquiry regarding the prospective jurors' beliefs about a person's right to protect themselves and permitted to obtain their views on whether there were limits on that protection. Id. at 143-45. Defense counsel was also permitted to ask whether the prospective jurors would follow the court's instructions on the law of self-defense. Id. at 143-45.

Jackson prosecuted a direct appeal from his conviction where the following claim was raised, verbatim: "The trial court erred in limiting appellant's voir dire on his defense of self defense." See Initial Brief of Appellant. (DE# 10; Ex. 5). Specifically, Jackson argued that trial counsel was merely permitted to question the jury regarding vague generalities about the self-defense theory and was unlawfully prohibited by the trial court from exploring the ramifications of the defense. Id. at 11-4. Jackson asserted that he was deprived of his right to conduct meaningful voir dire and, thereby, deprived of his right to a fair and impartial jury. Id. In its Answer Brief, the state did argue that trial counsel had failed to preserve the issue for appellate review in that counsel had not interposed a contemporaneous objection and renew the objection before the jury was sworn.[8] See Answer Brief at 6-7. (DE# 10; Ex. 6). However, immediately after raising the procedural argument, the state stated in its Answer Brief:

> Be that as it may, when trial counsel told the jury that one of the issues that the jury would have to consider is whether or not Mr. [Jackson] acted in self-defense, she was asking the jury to consider the concept of self-defense under certain testimony or state of facts, more specifically the facts of this case. Prospective jurors are examined on their voir dire for the purpose of ascertaining if they are qualified to serve, and it is not proper to propound hypothetical questions under a certain state of the evidence, or on a certain state of facts, when their evident purpose is to have the jurors indicate in advance what their decision will be under this statement of facts. (citations omitted)....

Id. at 7. The state then went on to extensively and thoroughly discuss on the merits the issue raised on direct appeal and the

---

[8]In Florida, an issue regarding jury selection is not preserved for direct appeal when the defendant affirmatively accepts the jury without renewing his prior objection. Green v. State, 679 So.2d 1294, 1294 (Fla. 4 DCA 1996), citing, Joiner v. State, 618 So.2d 174, 176 (Fla. 1993)(holding that party failed to preserve issue of correctness of trial court's ruling on peremptory challenge where she or he did not renew objection before the jury was sworn).

state cited pertinent caselaw. Id. at 7-9. The state concluded that:

> Clearly, when the trial court sustained the State's objection and asked defense counsel not to pre-try her case he was merely advising defense counsel not to question the jury in regard to specific facts to be elicited in this case. He was not limiting appellant's voir dire about the willingness of the prospective jurors to accept the appellant's theory of defense.

Id. at 8. The state further argued that Jackson's assertion that he was deprived of a fair and impartial jury was a speculative assertion and no demonstration of prejudice had been made with regard to the trial court ruling. Id. 9. The Florida appellate court affirmed the conviction in a *per curiam* decision without written opinion. See Jackson v. State, 931 So.2d 919 (Fla. 4 DCA 2006).

Review of the state's brief on direct appeal reveals that the state's procedural bar argument was in no way the predominant argument made by the state to the appellate court. Rather, the state relied upon the lack of merit of the claim raised when asserting that the subject conviction and sentence should be affirmed. Further, there is no clear application of a state procedural bar by the state appellate court, resulting in the subject claim not being reviewing on the merits. Thus, even if trial counsel's performance could be deemed deficient for failing to properly object to the alleged improper limitation of questioning during voir dire, trial counsel did not render constitutionally ineffective assistance of counsel in that Jackson did not suffer prejudice as a result of counsel's inaction.[9] See

---

[9] It is beyond dispute that unless a movant satisfies *both* prongs of the *Strickland* inquiry, relief should be denied. Strickland, 466 U.S. 668, 687 (1984). Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." Id. at 697. See also Brown

<u>Strickland</u>, <u>supra</u>. <u>See also</u> <u>Davis v. Secretary for Dept. of Corrections</u>, 341 F.3d 1310, 1316 (11 Cir. 2003)(holding that when failure of counsel involves solely his role as appellate counsel at trial, the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal).

If Jackson is additionally arguing that his constitutional rights were violated by the trial court's limitation during the voir dire proceeding, such claim must also fail. It is without question that voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. <u>See Rosales-Lopez v. United States</u>, 451 U.S. 182, 188-89 (1981). Without adequate jury selection proceedings, the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. <u>Rosales-Lopez</u>, 451 U.S. at 188-89. The obligation to impanel an impartial jury lies in the first instance with the trial judge, therefore, federal and state judges have been accorded ample discretion in determining how best to conduct *voir dire*. <u>Id</u>. <u>See also</u> <u>Vining v. State</u>, 637 So.2d 921, 926 (Fla.)(noting that the scope of *voir dire* questioning rests in the sound discretion of the court and will not be interfered with unless that discretion is clearly abused), <u>cert</u>. <u>denied</u>, 513 U.S. 1022 (1994). Failure to ask specific questions will be reversed only for abuse of this discretion. Abuse of discretion will be found, however, if the questioning is not reasonably sufficient to

---

v. Head, 272 F.3d 1308, 1313 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002)(holding that the performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established). "To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.")(internal quotation marks and citation omitted). <u>Knowles v. Mirzayance</u>, ___ U.S. ___, ___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009).

test the jury for bias or partiality. See United States v. Tegzes, 715 F.2d 505, 507 (11 Cir. 1983)(stating that the standard for evaluating the district court's exercise of its discretion is whether the procedure used for testing juror impartiality created "a reasonable assurance that prejudice would be discovered if present.")(citation omitted). More particular to this case, the courts have held that the defense of self-defense is not in one of the categories as to which the possibility of jurors' prejudice is so high that specific questioning is required. See e.g., United States v. Querta, 2 Fed.Appx. 890, 891 (9 Cir. 2001), citing, United States v. Jones, 722 F.2d 528, 529-30 (9 Cir. 1983)(listing categories and holding that the defense of coercion, like self-defense, does not fall within them). The voir dire that was permitted here was reasonably sufficient to test the jury for bias or partiality and, therefore, rejection of Jackson's desire to pursue more specific questioning with regard to the self-defense theory was not an abuse of discretion by the trial court. Further, any claim by Jackson that he was prejudiced by the trial court's limitation is purely speculative, not warranting relief. Id.

Accordingly, the ineffective assistance of trial counsel claim is meritless and the state appellate court's rejection of the underlying claim on direct appeal was clearly proper and should not be disturbed in this federal proceeding.[10] See 28 U.S.C. §2254(d);

---

[10]Since it does not appear from full review of the record that the state trial and/or appellate courts addressed on the merits the exact ineffective assistance of trial counsel claim raised in this federal petition as ground one, the standard established by the AEDPA would not be applicable, requiring a de novo review. See Cone v. Bell, _____ U.S. ___, 129 S.Ct. 1769, 1784 (2009), citing, Rompilla v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)(de novo review where state courts did not reach prejudice prong under Strickland v. Washington, 466 U.S. 668 (1984)); Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(same). See also Romine v. Head, 253 F.3d 1349, 1365 (11 Cir. 2001), cert. denied, 535 U.S. 1011 (2002). When conducting such review, Jackson is not entitled to federal habeas corpus relief on claim one in that the ground is meritless for the reasons expressed herein.

Williams v. Taylor, 529 U.S. 362 (2000). See also Knowles v. Mirzayance, ____ U.S. ___, 129 S.Ct. 1411, 1420.

(2) Claim Two

Jackson alleges in ground two that his lawyer rendered ineffective assistance when he failed to file a motion to suppress his involuntary post-arrest statements, because the constitutional warnings given were inadequate pursuant to *Miranda* and, therefore, violative of his Fifth Amendment rights.[11] Jackson's claim here is based upon the Florida Fourth District Court of Appeal's decision issued on May 26, 2004, in Roberts v. State, 874 So.2d 1225 (Fla. 4 DCA 2004), *rev. denied sub nom*. State v. West, 892 So.2d 1014 (Fla. 2005) where the state appellate court held that the Broward County Sheriff's Office Miranda-warning utilized in that case was misleading and inadequate to fully inform a suspect of his

---

[11]Jackson provided the state trial court with a copy of the subject Miranda rights waiver form during one of his postconviction proceedings. See City of Miramar Police Department's Your Rights form. (Appendix "H" to Petition Alleging Ineffective Assistance of Post-Conviction and Appellate Counsel)(DE# 10; Ex. 25). As indicated in the rights waiver form, Jackson was advised as follows:

> [B]efore I ask you any questions, I want to advise you of your rights under the law. Do you understand that I am a Police Officer?
>
> You have the right to remain silent; that is, you need not talk to me or answer any questions if you do not want to.
>
> You have the right to talk to an attorney and have him here with you  before we ask you any questions.
>
> If you cannot afford to retain your own attorney, and you want an attorney, one will be appointed for you before we ask you any questions.
>
> If you decide to answer the questions now, without an attorney present, you will still have the right to stop answering my questions at any time until you talk to an attorney.
>
> Knowing and understanding your rights as I have explained them to you, are you now willing to answer my questions without an attorney present?
>
> Should you talk to me, anything you might answer to my questions will be introduced in evidence in a court of law against you.

Id. Immediately after the above-listed rights, the following question was posed on the written form: "Do you understand?" Jackson wrote "Yes" directly on the form and signed his name each time next to the affirmative response. Id.

14

constitutional right to counsel *during* interrogation. *Roberts* was decided well-after the interrogation took place in this case on August 10, 2002, but before the trial court proceedings were conducted on January 3, 2005. In the state postconviction proceedings, Jackson also expressly relied upon *Roberts* as well as other state and federal cases. <u>See</u> Motion for Post Conviction Relief Pursuant to Florida Rule of Criminal Procedure 3.850. (DE# 10; Ex. 9).

Even if this Court were to find trial counsel's performance deficient for failing to challenge the subject waiver form on the basis now raised, under established federal and Florida law, Jackson suffered no prejudice for counsel's failure to do so. The determinative question is whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979); <u>accord</u>, <u>Thomas v. State</u>, 894 So.2d 126, 136 (Fla. 2004). In *Miranda*, the Supreme Court held, among other things, that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to *have the lawyer with him during interrogation*." <u>Miranda</u>, 384 U.S. at 471, 86 S.Ct. at 1626 (emphasis added). However, the Supreme Court "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant[,]" so "no talismanic incantation [is] required to satisfy its strictures." <u>California v. Prysock</u>, 453 U.S. 355, 359 (1981). The inquiry is simply whether the warnings reasonably '"conve[y] to [a suspect] his rights as required by *Miranda*."' <u>Duckworth v. Eagan</u>, 492 U.S. 195, 203 (1989)(brackets in original)(quoting *Prysock*, 453 U.S. at 361). So long as the warning given to a defendant adequately fulfills *Miranda*'s substantive requirements, it is sufficient. <u>Duckworth v. Eagan</u>, 492 U.S. 195, 203 (1989). The Fifth Circuit Court of Appeals

15

in a habeas corpus proceeding has rejected a similar claim and has found a warning similar to the one used in the instant case constitutionally sufficient pursuant to *Miranda*. See Bridgers v. Dretke, 431 F.3d 853 (5 Cir. 2005)(holding that state appellate court's conclusion that *Miranda* warnings given to defendant before custodial interrogation, which stated that defendant had right to presence of counsel prior to questioning but did not explicitly state that he had right to attorney during questioning, were adequate was not unreasonable application of clearly established federal law, as would warrant federal habeas relief), *cert. denied sub nom.*, Bridgers v. Quarterman, 548 U.S. 909 (2006).

Jackson was advised that he had the right to talk with a lawyer present before any questioning and that if he could not afford a lawyer, one would be appointed to represent him before any questioning, if he wished. See City of Miramar Police Department's Your Rights form. At the bottom of the waiver form used here, where Jackson affixed his signature, the form stated:

> I, Kevin Williams [a/k/a O'Neill Jackson], have read this statement of my rights, or have had it read to me; and I understand what my rights are. I am willing to make a statement and answer questions. *I do not wish an attorney at this time*. No threats or promises have been made to me. No pressure of any kind has been used against me, nor have I been tricked or fooled into giving a statement. I understand and know what I am doing.

(emphasis added). Id. See also Trial Transcript at 419-23. After receiving all of his rights, Jackson stated that he was willing to talk to the officers without an attorney present. Id. Under these circumstances, it is apparent that even if the wording of the rights waiver form was in any way deficient, Jackson was still apprised of the substantive rights he possessed under *Miranda*, including his entitlement to have a lawyer present during questioning and that such statement could be used against him at

16

trial.

Since the *Miranda* warnings that were actually administered in this case were constitutionally adequate, Jackson cannot show that he was prejudiced when his lawyer failed to challenge the wording of the waiver form and file a motion to suppress, because such an argument rightfully would have been unavailing. <u>See e.g.</u>, <u>Canete v. State</u>, 921 So.2d 687 (Fla. 4 DCA)(although defendant was not apprised expressly that he had the right to have an attorney present "during" or "while" questioning, warning given contained the functional equivalent and was sufficient to convey this right to a person of ordinary intelligence and common understanding, therefore, motion to suppress rightfully denied), <u>rev</u>. <u>denied</u>, 944 So.2d 986 (Fla. November 20, 2006), <u>citing</u>, <u>Duckworth v. Eagan</u>, 492 U.S. 195, 203 (1989).[12] It is well settled that there is no duty to raise issues which have little or no chance of success. <u>See</u> <u>Knowles v. Mirzayance</u>, ____ U.S. ____, _____, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009)(the law does not require counsel to raise every available non-frivolous defense). <u>See generally</u> <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). More specifically, federal law recognizes that "[c]ounsel cannot have been ineffective for failing to pursue ... a meritless suppression motion."[13] <u>United</u>

---

[12]The rights waiver form under attack in *Canete* was virtually identical to the one used in the instant case.

[13]There is currently a split among the circuits with respect to whether the warning must explicitly provide that a suspect is entitled to the presence of counsel during interrogation. <u>See</u> <u>Bridgers v. Dretke</u>, 431 F.3d 853, 859 (5 Cir. 2005), <u>cert</u>. <u>denied</u>, 548 U.S. 909 (2006) . The Fifth Circuit, like the Sixth, Ninth, and Tenth Circuits, has interpreted *Miranda* to require a more explicit warning, indicating that a suspect is entitled to counsel during questioning. <u>Id</u>., <u>citing</u>, <u>Atwell v. United States</u>, 398 F.2d 507, 510 (5 Cir. 1968); <u>United States v. Tillman</u>, 963 F.2d 137, 140-42 (6 Cir. 1992); <u>United States v. Noti</u>, 731

States v. Stewart, 388 F.3d 1079, 1085 (7 Cir. 2004). It is noted that the identical issue before this Court is currently before the United States Supreme Court in Florida v. Powell, Case No. 08-1175.[14]

Moreover, Jackson did not receive constitutionally ineffective assistance of counsel when his lawyer did not file a motion to suppress for another reason. Here, portions of the statement to the police could be viewed as exculpatory, rather than inculpatory, and admission benefitted the defense. While Jackson ultimately admitted

---

F.2d 610, 615 (9 Cir. 1984); United States v. Anthon, 648 F.2d 669, 672-74 (10 Cir. 1981). On the other hand, the Second, Fourth, Seventh, and Eighth Circuits under various circumstances have held that warnings are adequate without explicitly stating that the right to counsel includes having counsel present during the interrogation. Id., citing, United States v. Vanterpool, 394 F.2d 697, 698-99 (2 Cir. 1968); United States v. Frankson, 83 F.3d 79, 81-82 (4 Cir. 1996); cf. United States v. Adams, 484 F.2d 357, 361-62 (7 Cir. 1973)(finding warning adequate but stating that warnings provided to suspects on the street are not expected to be as precise as those given at the police station); United States v. Caldwell, 954 F.2d 496, 500-04 (8 Cir. 1992)(finding no plain error when warning omitted right to counsel during interrogation).

[14]It is noted that the Florida Supreme Court held after Roberts and after trial proceedings were conducted in the instant case that Miranda-warnings informing a defendant that he had the right to talk to a lawyer "before any questioning," and that he could use that right at any time during the interview, were insufficient to inform defendant of his right to have counsel present during questioning. State v. Powell, 998 So.2d 531 (Fla. September 29, 2008). Powell, however, did not involve the Broward County Sheriff's Office Miranda-rights card, but the Tampa police standard police department form used during interrogation which did not explicitly indicate that a suspect had the right to have an attorney present during questioning. Id Both the Florida Supreme Court and the United States Supreme Court have thus far declined to review cases ruling on the constitutionality of the Broward County Sheriff's Office's Miranda rights card. See Bross v. State, 898 So.2d 1027, 1027 n.2 (Fla. 4 DCA 2005), citing, Franklin v. State, 876 So.2d 607 (Fla. 4 DCA 2004)(noting that Miranda form used by Broward County Sheriff's Office was only one of ninety rights forms obtained from federal and state law enforcement agencies introduced in evidence that failed to indicate that the suspect could consult with a lawyer during questioning), cert. denied, 543 U.S. 1081 (2005). Moreover, the Florida courts have declined to make the Roberts decision retroactively applicable to cases on collateral review. See Ulcena v. State, 925 So.2d 346 (Fla. 4 DCA 2006). It is also noted, however, that the United States Supreme Court on June 22, 2009, granted the State of Florida certiorari review in Powell. See Florida v. Powell, ___ U.S. __, 129 S.Ct. 2827, 174 L.Ed.2d 551 (2009). Oral argument was conducted in the case on December 2, 2009, and the case remains pending before the Supreme Court.

that he had shot the victim, he told the officers that he had received multiple threatening telephone calls from the victim regarding the debt;[15] that he was fearful of the victim; and that he shot the victim in self-defense, believing the victim was about to retrieve a gun from his nearby car and then shoot him. See Trial Transcript at 426-30, 468-71, 487-88, 497-98. Trial counsel heavily relied upon the interview with the police to support the defense theory of self-defense. Id. at 706-18, 747. During closing argument, trial counsel attempted to persuade the jury that Jackson's actions were lawful, because he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted all reasonable means to escape.[16] Counsel's decision not to seek the suppression of the now-challenged statements to support the defense presented was a reasonable strategic decision and/or did not prejudice the defense.

---

[15]An audiotape recording of the voicemail messages the victim made to Jackson was played for the jury during the victim's direct examination. See Trial Transcript at 514-16.

[16]The law in Florida at the time of the subject criminal incident was that before a defendant could avail himself of the defense of self-defense, he was required to establish that his life was in imminent danger and he could not safely retreat. See generally Soberon v. State 545 So.2d 490 (Fla. 3 DCA 1989)(recognizing that a person under attack has a duty to "retreat to the wall" before taking a life, and that the person must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life). See also Thomas v. State, 918 So.2d at 327, 330 (Fla. 1 DCA 2005. Until October 2005, Florida required a person to retreat in most situations before deadly force could be employed. See §776.013, Fla.Stat. (2005); Smiley v. State, 966 So.2d 330 (Fla. 2007); Jenkins v. State, 942 So.2d 910, 914 (Fla. 2 DCA 2006). Florida law with regard to the duty to retreat has been materially altered by statutory amendments that became effective on October 1, 2005. See ch. 2005-27, §§1, 2, Laws of Fla. Current law now provides that

A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

Section 766.013(3), Fla.Stat.

Finally, Jackson's pre-trial statement to the police did not affect the outcome of his trial. The state's theory at trial was that Jackson had no legal justification whatever for shooting the victim. The state acknowledged that the voice mail messages left by the victim for Jackson, in which he demanded that the loan be repaid, did indeed sound angry and the state conceded that the language used by the victim was indeed harsh and filled with expletives. However, the state maintained that the telephone calls were not sufficient to reasonably place Jackson in fear for his life and justify Jackson's actions in going to the soccer field knowing that the victim would also be there that day and in arming himself with a revolver before going to that field. The state further asserted that, even if Jackson had been justified in arming himself based upon perceived threats against his life by the victim, once Jackson saw the victim arrive at the soccer field, knowing that the victim generally kept a firearm in his truck, he then had a duty to retreat. Witness testimony and forensic evidence at trial showed that, not only did Jackson not retreat, Jackson and the victim engaged in a verbal confrontation and moments later Jackson shot the victim in the back as the victim turned towards his truck.

Trial counsel forcefully presented the defense of self-defense and the jury was instructed as to the theory of self-defense. The jury, however, rejected the defense as was its prerogative and instead believed the evidence admitted by the state and the testimony of the state witnesses. Thus, the competent evidence presented at trial upon which the jury's verdict was based, which included testimony from the victim and eyewitnesses and forensic evidence, was more than sufficient to satisfy a reasonable trier of fact that Jackson was guilty of the crime for which he was convicted. See Jackson v. Virginia, 443 U.S. 307 (1979). In other

words, Jackson did not establish that his life was in imminent danger and that he could not have safely retreated. Under the circumstances of this case, where there was otherwise sufficient evidence to support the conviction, the admission of the post-arrest statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).[17]

In conclusion, the record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made appropriate objections, moved for judgment of acquittal, and presented a forceful and compelling closing argument. Jackson has failed to show that he was deprived of constitutionally effective assistance of counsel for any or all of the reasons alleged above. It is apparent that defense counsel presented the best possible defense under the circumstances of this case, and the fact that the defense presented at trial was not successful does not mean that

---

[17]The harmless error rule is applicable to evidence admitted in violation of *Miranda*. United States v. Street, 472 F.3d 1298, 1314-15 (11 Cir. 2006)(*citing* United States v. Arbolaez, 450 F .3d 1283, 1292-93 (11 Cir.2006)). The Florida Supreme Court has also held that despite its earlier holding in State v. Powell, 998 So.2d 531 (Fla. 2008) and despite a finding that a defendant was provided with a defective *Miranda*-warning in that the warning failed to advise the defendant of his right to counsel during his custodial interrogation, the erroneous admission of a confession during trial remains subject to harmless-error review. Rigterink v. State, 2 So.3d 221 (Fla. 2009). On March 25, 2009, the United States Supreme Court entered a stay in *Rigterink* in order to give the state an opportunity to seek review, see Florida v. Rigterink, 129 S.Ct. 1667 (March 25, 2009), and the state shortly thereafter filed a petition for certiorari review.

counsel's performance was constitutionally ineffective.

The denial of postconviction relief by the trial court on the identical ground of ineffective assistance of trial counsel raised here as claim two, which ruling was affirmed by the state appellate court, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). <u>See also</u> <u>Knowles</u>, ____ U.S. ____, 129 S.Ct. 1411 (2009); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11 Cir. 2004)("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference-this one to a state court's decision-when we are considering whether to grant federal habeas relief from a state court's decision."), *cert*. *denied*, 544 U.S. 982, 125 S.Ct. 1847, 161 L.Ed.2d 738 (2005).

    B.   <u>Ineffective Assistance of Appellate Counsel</u>

Jackson alleges in ground three that he received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal that the jury instructions were fundamentally flawed. He essentially maintains that he was denied due process and a fair trial when the trial court instructed the jury on the forcible felony exception to the justifiable use of deadly force when he had not been charged with a forcible felony independent of the attempted murder charge. Jackson claims that the trial court's instructions resulted in negating his sole defense.

As indicated above, to prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered

22

prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). The two-prong Strickland test is equally applicable in assessing counsel's performance in appellate proceedings. See Smith v. Robbins, 528 U.S. 259, 285-86 (2000). See also Grubbs v. Singletary, 120 F.3d 1174, 1176 (11 Cir. 1997)(applying the Strickland test to a claim of ineffective assistance of appellate counsel). In Jones v. Barnes, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11 Cir. 2001), quoting, Strickland, 466 U.S. at 691. In determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. Eagle, 279 F.3d at 943.

Under Florida law, "an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument." Diaz v. Secretary for the Dept. of Corrections, 402 F.3d 1136, 1142 (11 Cir. 2005). See also Jackson v. Dugger, 931 F.2d 712, 715 n.7 (11 Cir. 1991)(noting that the "failure of trial counsel to object at trial bars appellate review."). The only exception to this rule is when the error constitutes a "fundamental error." Id. For an error to be "fundamental and justify reversal in the absence of a timely

objection," it must be such that "a verdict of guilty could not have been obtained without the assistance of the alleged error." Porter v. Crosby, 840 So.2d 981, 984 (Fla. 2003)(internal quotation marks and citation omitted).

In Florida, the forcible felony exception to a self-defense instruction is based on Florida Standard Jury Instruction (Criminal) 3.6(f), which is predicated on Fla.Stat. §776.041(1) (West 2000).[18] The Florida Supreme Court has held that this instruction may only be given in circumstances where the person claiming self-defense was engaged in another independent forcible felony at the time of the subject incident. Martinez v. State, 981 So.2d 449, 457 (Fla. 2008). The court noted, however, that the erroneous reading of the forcible felony exception instruction does not always constitute fundamental error and that fundamental error occurs only when the giving of the instruction deprives the defendant of a fair trial. Id. at 457.

Full and careful review of the record reveals that the jury was not so instructed in this case. See Trial Transcript at 759-63. Further, the actual instructions regarding self-defense and the exceptions thereto given in this case were appropriate in that the instructions were based upon the evidence admitted at trial and

---

[18]The subject standard jury instruction is in relevant part as follows:

An issue in this case is whether the defendant acted in self defense. It is a defense to the offense with which (defendant) is charged if the [death of] [injury to] (victim) resulted from the justifiable use of force likely to cause death or great bodily harm.

\*          \*          \*

However, the use of force likely to cause death or great bodily harm is not justifiable if you find:

1. (Defendant) was attempting to commit, committing, or escaping after the commission of (applicable forcible felony)....

applicable law.[19] <u>Id</u>. Under the facts of this case, Jackson could not establish that his life was in imminent danger and that he could not have safely retreated. Rather, the evidence indicates that the victim was shot while he was returning to his vehicle where, presumably, Jackson knew the victim kept a gun. Pursuant to then-Florida law, since Jackson was able to retreat, he was obligated to retreat, rather than engage in a confrontation with the victim which resulted in Jackson firing his gun and shooting the victim in the back. The instructions given to the jury fairly and correctly stated the issues of law. Consequently, the ineffective assistance of appellate counsel claim is frivolous, as

---

[19]Here, the trial court instructed the jury in pertinent part as to the justifiable use of deadly force as follows:

An issue in this case is whether the defendant acted in self-defense.

It is a defense to the offense with which Kevin Williams is charged  if the injury to Earl Smith resulted from the justifiable use of force likely to cause death or great bodily harm.

The use of force likely to cause death or great bodily harm is justifiable only if the defendant believed that the force was necessary to prevent imminent death or great bodily harm to himself while resisting:

> Another's attempt to murder him; or
> Any attempt to commit harm upon him.

A person is justified in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent [] [i]mminent death or great bodily harm to himself or another.

However, the use of force likely to cause death or great bodily harm is not justifiable if you find that:

1.  Kevin Williams intentionally provoked the use of force against himself, unless:

A. The force asserted towards the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using force likely to cause death or great bodily harm to Warren Earl Smith.

B. In good faith the defendant withdrew from physical contact with Warren Earl Smith and indicated clearly to Warren Earl Smith that he wanted to withdraw and stop the use of force likely to cause death or great bodily harm, but Earl Warren Smith continued or resume the use of force.

(Trial Transcript at 759-60).

refuted by the record. Moreover, Jackson cannot demonstrate that the state court's jury instructions rendered his trial fundamentally unfair, entitling him to federal habeas corpus relief.[20]

Thus, the state appellate court's denial of Jackson's petition for writ of habeas corpus, where the subject ineffective assistance of appellate counsel claim now raised in this federal petition was presented, is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should not be disturbed.[21] 28 U.S.C. §2254(d)(1); Williams v. Taylor, supra. See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002).

C. Sentence Challenge

Jackson claims in ground four that his sentence of forty

---

[20]"An error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process." Jacobs v. Singletary, 952 F.2d 1282, 1290 (11 Cir. 1992)(quotation omitted). "It is not sufficient that the instruction was undesirable, erroneous, or even universally condemned." Id. (quotation omitted). Consequently, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. Jones v. Kemp, 794 F.2d 1536, 1540 (11 Cir.), cert. denied, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); Bryan v. Wainwright, 588 F.2d 1108 (5 Cir. 1979); Pleas v. Wainwright, 441 F.2d 56 (5 Cir. 1971). A jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and law. United States v. Russell, 717 F.2d 518, 521 (11 Cir. 1983).

[21]It is noted that the state appellate court in the state habeas corpus proceeding was the same court that had decided Jackson's direct appeal. By denying the state habeas corpus petition, the court implicitly found that the outcome of the direct appeal proceedings would not have been different if appellate counsel had raised the subject issue on direct appeal.

years' imprisonment is unlawful, because it exceeds the statutory maximum without a jury finding. He is apparently arguing here, as he did in the state court proceedings, that his sentence is violative of his constitutional rights pursuant to _Apprendi v. New Jersey_, 530 U.S. 466 (2000) and its progeny,[22] because the jury did not make specific findings with respect to aggravating factual elements. This claim is meritless.

It must first be pointed out that, contrary to Jackson's assertion, the jury did in fact expressly find that Jackson actually possessed and discharged a firearm during the course of the subject criminal incident and that he inflicted great bodily harm upon the victim as a result of the discharge and possession of the firearm. See Verdict. (DE# 10; Ex. 2). Since Jackson's life sentence imposed on attempted first degree murder, a first-degree felony enhanced to a life felony due to the use of a firearm, did not exceed the statutory maximum of life imprisonment, _see_ Fla.Stat. §§775.087, 782.04(1), there was no _Apprendi_ error. See _Jewell v. Crosby_, 142 Fed.Appx. 371, 373 (11 Cir. 2005).

As to any error pursuant to _Blakely_, the record reveals that Jackson had a sentencing guidelines range of a minimum of 83.4 months' imprisonment up to a maximum term of life imprisonment with a twenty-five-year mandatory minimum term. See Criminal Punishment Code Scoresheet. (DE# 10; Ex. 3). The sentencing guidelines range

---

[22]In brief, the United States Supreme Court held in _Apprendi v. New Jersey_, 530 U.S. 466 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In its later opinion in _Blakely v. Washington_, 542 U.S. 296 (2004), the Supreme Court explained that under _Apprendi_ "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. at 303-04. In a case decided shortly after _Blakely_, the Supreme Court explicitly held that _Blakely_ applies to the Federal Sentencing Guidelines. See _United States v. Booker_, 543 U.S. 220 (2005).

was partly based upon the inclusion of forty points for severe victim injury. Id. As indicated, the jury made a specific finding that the victim suffered great bodily harm. See Verdict. During the sentence proceeding the trial court thoroughly reviewed the facts of the case, which the court indicated reflected poorly on both the victim and Jackson. See Excerpt of sentence proceeding at 21-4. (DE# 10; Ex. 4). The court went on to point out additional relevant facts, such as, Jackson's prior criminal record of narcotics convictions, an open warrant in violation of his term of probation, etc. Id. at 24. The court also noted that the victim in this case was permanently disabled as a result of the gun shot to his back.[23] Id. at 24-5.

After carefully weighing both the aggravating and mitigating circumstances in this case, the trial court found that a forty-year sentence with a twenty-five-year mandatory minimum term was appropriate. Id. Given the evidence adduced at trial showing that Jackson possessed a firearm and discharged a firearm during the commission of the subject offense and that his criminal actions caused great bodily harm to the victim, any error would be, at worst, harmless. See Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546 (2006)(holding that Apprendi/Blakely error is subject to harmless-error analysis). See also Galindez v. State, 955 So.2d 517 (Fla. 2007)(holding that violation of right to jury trial at sentencing under Apprendi and Blakely was subject to harmless error analysis). According, the trial court properly denied Jackson relief on his Apprendi claim raised in his Rule 3.800 motion, which ruling was affirmed on direct appeal. See Jackson v. State, 959 So.2d 271 (Fla. 4 DCA 2007). Jackson is, therefore, not entitled to

---

[23]The evidence admitted at trial indicates that as a result of the gun shot wound sustained by the victim, he required spinal surgery. The surgery was apparently not completely successful in that the victim is now paralyzed and is confined to a wheelchair. See Trial Transcript at 545.

federal habeas corpus relief on his fourth and final claim. See 28 U.S.C. §2254(d); Williams v. Taylor, supra.

### VII. Conclusion

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 13th day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  O'Neill Jackson, Pro Se
     DC# L56040
     Martin Correctional Institution
     1150 SW Allapattah Road
     Indiantown, FL 34956-5397

     Joseph A. Tringali, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428